IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELLE SCHILLER, | ) |
| | ) |
| Plaintiff, | )  No. 17 C 8514 |
| | ) |
| v. | ) |
| | )  Magistrate Judge M. David Weisman |
| NORTHERN SUBURBAN SPECIAL RECREATION DISTRICT, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Gabrielle Schiller sues Northern Suburban Special Recreation District for its alleged violations of the Americans with Disabilities Act ("ADA"). The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court denies the motion.

**Facts**

Defendant offers recreation opportunities to people with disabilities. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 2.) In May 2014, defendant hired plaintiff as a Site Coordinator. (*Id.* ¶ 5.)[1] In January 2016, plaintiff became a Program Leader II, and later, a Recreation Specialist - Adult. (*Id.* ¶¶ 6-7.) Defendant's job description for the Recreation Specialist position states that its function is to be "[r]esponsible for the coordination and implementation of safe, high-quality recreation services for individuals with disabilities," and the essential duties of the job include: "[d]irect[ing] leadership of recreation programs and overnight trips for individuals with disabilities of all ages;" "[l]ead[ing] assigned programs for individuals with disabilities of all ages;"

---

[1] Plaintiff disputes some of the facts asserted by defendant in this paragraph but not the one cited here.

1

"[a]dapt[ing] to changes in all aspects of the job, including assigned tasks, scheduling and new or unforeseen circumstances;" and "sitting, standing, bending, stooping, and walking" for "prolonged periods." (Def.'s LR 56.1(a) Stmt., Ex. B, Pl.'s Dep. Ex. 2, ECF 32-2 at 71.)

From August 15,[2] through Friday 19, 2016, defendant held an overnight camp for adolescents at Camp Duncan. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 9.) Plaintiff and Emily Vermeer, Recreation Specialist -Youth, were scheduled to be the program leaders for Camp Duncan. (*Id.* ¶ 10.)[3] However, defendant excused Vermeer from attending the trip because she was pregnant. (*Id.*)

On August 9, 2016, Jerry Barton, plaintiff's supervisor, told plaintiff that Vermeer would not be attending the Camp Duncan trip, and thus plaintiff would be the trip leader. (*Id.* ¶¶ 7, 13.) During this meeting, plaintiff says she told Barton that she struggled with stress, anxiety, fibromyalgia, and chronic fatigue and that standing on her feet for extended periods of time made her weak. (*Id.* ¶ 46; Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 12.) Plaintiff says she told Barton she was concerned about the trip being understaffed and was uncomfortable about there not being another full-time staff member present because she had never been to Camp Duncan. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 14.)[4] Plaintiff says that Barton agreed "[to] send a full-time staff [member] with her [to the camp] during the day and overnight, that [plaintiff] could call Vermeer and Barton when needed, and that she would have the 'co-leadership'" of the two other employees going on the trip, intern Hailey Haas and part-time staff member Braselina Sabini. (*Id.* ¶¶ 11,[5] 47.) Ultimately, plaintiff told Barton she was not worried about leading Camp Duncan. (Def.'s

---
[2] Paragraph 9 of defendant's LR 56.1(a) Statement says the Camp Duncan trip ran from August 16-19, 2016. However, subsequent paragraphs make clear that it ran from August 15-19, 2016. (*See* Def.'s LR 56.1(a) Stmt., ECF 32 ¶¶ 19, 22.)
[3] *See* n.1.
[4] *See* n.1.
[5] *See* n.1.

LR 56.1(a) Stmt., Ex. B, Schiller Dep. at 51-52, ECF 32-2 at 14; *id.*, Schiller Dep. Ex. 11, ECF 32-2 at 203.)

After this meeting, Barton sent an email to Human Resources Manager, Darleen Negrillo, asking whether defendant had "any info . . . about medical conditions that could interfere with [plaintiff's] job responsibilities." (Pl.'s Stmt. Add'l Facts, Ex. F, Barton Dep. Ex. 2, ECF 37-7 at 3.) The email also said that plaintiff had mentioned "(in regards to Camp Duncan) that she becomes weak when standing for extended periods of time" and that "fatigue and stress can weaken her." (*Id.*) Barton said "[plaintiff] did not appear to be concerned about working the trip, but I need to know if these are things that need to be taken into consideration moving forward." (*Id.*) Negrillo responded that plaintiff did not have "any restrictions on file" and "knows her limitations and would let [them] know if there was a concern." (*Id.* at 2.)

Barton did not send another full-time staff member to Camp Duncan. (Def.'s Resp. Pl.'s Stmt. Add'l Facts, ECF 38 ¶ 24.) However, defendant's Manager of Operations, Becca Zajler, Zajler's supervisor, Candace Cunningham, and staff member Mary Kate Murphy attended portions of the trip, and Barton and Murphy were available by phone. (*Id.* ¶ 1; Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 17.)

At the time of the Camp Duncan trip, defendant had a policy that states: "During the program, the Program Leader/Site Coordinator will give medication . . . to participant[s]." (Def.'s LR 56.1(a) Stmt., Ex. B, Pl.'s Dep. Ex. 4 at 78, ECF 32-2 at 157.)[6] But, on August 15, 2016, the first day of the camp, plaintiff delegated medication distribution to Haas and Sabini. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 19.)[7] The same day, plaintiff "waited out" a participant's

---

[6] Plaintiff contends that a document used as an exhibit during Craig Culp's deposition contradicts this fact. (*See* Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 19.) Plaintiff did not, however, attach that document to her submission. (*See* Pl.'s Stmt. Add'l Facts, Ex. G, Culp Dep. Exs., ECF 37-8.)

[7] *See* n.1.

3

behavioral management issue while making a friendship bracelet, an activity plaintiff uses as a mental health coping mechanism. (*Id.* ¶ 20.)[8] Moreover, though plaintiff says she gave instructions to the appropriate staff member, a camp participant with a gluten restriction ate gluten the first day of camp. (*Id.* ¶ 21.)[9] At 11:30 p.m., plaintiff called Vermeer, rather than the on-call staff member, regarding the gluten issue. (*Id.*)

On August 16, 2016, the second day of the camp, plaintiff hyperventilated, cried, lost feeling in her hands and feet, had multiple panic attacks, decreased mobility, difficulty speaking, and increased pain. (Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 4.) At 8:50 a.m. that day, Cunningham and Zajler went to the camp and found plaintiff sitting on her bed. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 22.)[10] They also saw intern Haas administering medication to participants. (*Id.* ¶ 24.) Cunningham and Zajler told plaintiff that she was the leader of the trip, and as such "needed to be overseeing . . . dietary restrictions and medication," delegating behavior management issues, and calling a designated on-call staff member when there were problems. (Def.'s LR 56.1(a) Stmt. Ex. B, Schiller Dep. Ex. 13, ECF 32-2 at 205-06.) Plaintiff cried during the meeting with Cunningham and Zajler but "acknowledged that she was the assigned leader of the trip and said she felt confident that she could . . . lead the trip safely and successfully." (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 25.)

Later that day, Zajler told plaintiff that Sabini would leave the next morning because the participant assigned to Sabini was leaving the camp but the participant's aide would remain. (*Id.* ¶ 26.)[11] Plaintiff told Zajler that she was frustrated, felt unprepared for the trip, and was being pulled in too many directions as leader. (*Id.*) Plaintiff also said she knew other staff on the trip

---

[8] *See* n.1.
[9] *See* n.1.
[10] *See* n.1.
[11] *See* n.1.

4

were being questioned about her leadership, which hurt her feelings. (*Id.*) Ultimately, however, plaintiff said she could lead the trip successfully without Sabini. (*Id.*) When Zajler returned from Camp Duncan, she told defendant's Executive Director, Craig Culp, that she and Cunningham had coached plaintiff on her performance. (*Id.* ¶¶ 7, 27.)

At 5:30 p.m. the same day, plaintiff called Culp. (*Id.* ¶ 28.)[12] Plaintiff says she told him she had been disrespected by Zajler and Cunningham, she "was confused as [to] the plans for Camp Duncan," and she "could [not] run the camp without . . . further support." (Def.'s LR 56.1(a) Stmt., Ex. B, Schiller Dep. at 41-42, ECF 32-2 at 12.) Culp says plaintiff told him she could not stay at the camp because she had been disrespected by other staff members. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 31.) In any event, it is undisputed that after this interaction, plaintiff left the camp, Culp decided to terminate her, and he did so the next day. (*Id.* ¶¶ 33,[13] 40.)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

---

[12] *See* n.1.
[13] *See* n.1.

The ADA prohibits certain employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to the . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination, in this context, "includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To defeat defendant's motion on her failure-to-accommodate claim, plaintiff must offer evidence that suggests she is a qualified individual with a disability, defendant was aware of the disability, and defendant failed to reasonably accommodate that disability. *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014). Defendant argues that the record does not support any of these elements.

Plaintiff is a qualified individual with a disability if she can, "with or without reasonable accommodation, . . . perform the essential functions of [her job]." 42 U.S.C. § 12111(8). To determine whether a task is an essential function, "a court may consider, but is not limited to, evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, . . . the work experience of current incumbents in similar jobs," and "[t]he amount of time spent on the job performing the function." *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 964 (7th Cir. 2014) (Manion, J. concurring) (quotations and citations omitted).

Defendant says plaintiff was unable to perform the essential function of leading recreation programs.[14] (Def.'s Mem. Supp. Mot. Summ. J., ECF 31 at 3.) It is undisputed that, in the job

---

[14] At times, defendant frames the essential function as leading Camp Duncan. (*See* Def.'s Mem. Supp. Mot. Summ. J., ECF 31 at 3; Def.'s Reply Supp. Mot. Summ. J., ECF 39 at 4.) Read as whole, however, defendant's submissions seem to argue that the ability to lead recreation programs in general, not just Camp Duncan, is the essential function defendant believes is implicated here. (*See* Def.'s Mem. Supp. Mot. Summ. J., ECF 31 at 3; Def.'s Reply Supp. Mot. Summ. J., ECF 39 at 6-7.)

6

description, defendant listed the "function" of the Recreation Specialist as being "[r]esponsible for the coordination and implementation of safe, high-quality recreation services for individuals with disabilities of all ages" and listed "[d]irect leadership of recreation programs and overnight trips for individuals with disabilities of all ages" as an essential duty. (Def.'s LR 56.1(a) Stmt., Ex. B, Schiller Dep. Ex. 2, ECF 32-2 at 71.) Plaintiff nonetheless contends that leadership is not an essential function because defendant "sometimes excused staff from the assigned responsibility of leading assigned programs due to illness." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., ECF 35 at 4.) But occasionally excusing the performance of a function does not mean the function is not essential. *Winfrey v. City of Chi.*, 259 F.3d 610, 616 (7th Cir. 2001) ("[S]howing that not all employees perform at a particular time all the essential job functions does not make those functions non-essential."). Because the only evidence with respect to the essential functions of the Recreation Specialist position is the undisputed job description, the Court finds that leading recreation programs is an essential function of the job.

Even if it is an essential function, plaintiff says that, with the accommodation of a co-leader, she could have performed it. Defendant argues that assigning a co-leader is not a reasonable accommodation because doing so would just shift the leadership function to another employee. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) ("To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation."). Sharing responsibility for a task is not, however, the same as reassigning it, and sharing tasks may be a reasonable accommodation. *Id.* at 534 n.3 ("Circumstances might exist when employees working in teams are able to share duties among themselves, so that such sharing might be a form of reasonable accommodation."). Moreover, given that defendant originally assigned two Recreation Specialists, plaintiff and Vermeer, as

7

program leaders for the Camp Duncan trip, a jury might find co-leadership to be a reasonable accommodation in this case. *See Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998) ("The reasonableness of a requested accommodation is a question of fact."). In short, plaintiff has raised a genuine issue of material fact as to whether she is a qualified individual with a disability.

Viewed favorably to plaintiff, the record also raises an issue of material fact as to whether defendant knew about plaintiff's alleged disabilities. Plaintiff says she told Barton, a week before the Camp Duncan trip, that she struggled with stress, anxiety, fibromyalgia, and chronic fatigue and that standing on her feet for extended periods of time made her weak. (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 46; Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 12.) Defendant contends that Barton's alleged knowledge is irrelevant because Executive Director Culp was "the decision maker behind the actions that Plaintiff alleges to be discriminatory." (Def.'s Mem. Supp. Mot. Summ. J., ECF 31 at 6.) It is undisputed, however, that Barton was plaintiff's supervisor (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 7), and defendant offers no evidence that suggests employees were required to go to Culp, rather than their supervisor, to seek an accommodation. Accordingly, plaintiff has raised a triable fact issue as to the second element of her failure-to-accommodate claim.

Defendant contends that the third element is absent because plaintiff stopped engaging in the interactive process to determine an appropriate accommodation. *See Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) ("After an employee has disclosed that she has a disability, the ADA requires an employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances.") (quotations omitted). According to defendant, that process began at the August 9, 2016 meeting plaintiff had with Barton

8

but broke down when plaintiff failed to tell Zajler and Cunningham about her disabilities and request an accommodation when she met with them at Camp Duncan.

However, viewed favorably to plaintiff, the record suggests that the interactive process started and ended on August 9, 2016, when plaintiff asked Barton to assign another full-time staff member to the camp, allow plaintiff to call him and Vermeer when needed, and have Haas and Sabini act as plaintiff's co-leaders, and Barton agreed to do so. (*See* Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶¶ 46-47.) Because the record suggests that the parties agreed to an accommodation and defendant failed to provide it, plaintiff has raised a genuine issue of fact as to the last element of her failure-to-accommodate claim.

Plaintiff also claims that her termination violates the ADA. To defeat defendant's motion on this claim, plaintiff must offer evidence that suggests "'(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation, and (3) she has suffered from an adverse employment decision because of her disability.'" *Spurling*, 739 F.3d at 1060 (quoting *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002)).

Defendant does not dispute the first element and, for the reasons discussed above, the Court finds that there is a triable fact issue as to the second. Defendant argues, however, that proof of the last element, causation, is missing. The Court disagrees. Viewed favorably to plaintiff, the record shows that: (1) when Zajler visited Camp Duncan, plaintiff told Zajler that she was struggling with anxiety (Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 22); (2) Zajler reported on the Camp Duncan visit to Culp (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶ 27); (3) later the same day, when plaintiff called Culp, she told him she would have to leave the camp "due to [her] health

9

concern[s]" unless she got more support, and he told her she was being "selfish" (*id*. ¶ 30[15]; Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 35); (4) Culp asked Barton, who knew about plaintiff's alleged disabilities, whether he thought plaintiff should be fired (Def.'s LR 56.1(a) Stmt., Ex. C, Barton Dep. at 94, ECF 32-3 at 25); and (5) though defendant's policies permit the use of progressive discipline, Culp did not consider discipline other than termination for plaintiff (Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 38; *id.*, Ex. B at NSSRA 0055, ECF 37-3 at 3). Though this is a close case, viewed in plaintiff's favor, as they must be, these facts are sufficient to create a genuine issue as to whether defendant terminated plaintiff because of her disabilities.

Plaintiff's last claim is that defendant terminated her in retaliation for her request for an accommodation. To defeat defendant's motion on this claim, plaintiff must offer evidence that "would permit a reasonable factfinder to conclude that [plaintiff's request for accommodation] caused the discharge." *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (quotation omitted). "Such evidence includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (quotation omitted). Here, the record shows that Culp: (1) terminated plaintiff eight days after she requested an accommodation (Pl.'s Resp. Def.'s LR 56.1(a) Stmt., ECF 36 ¶¶ 40, 46); (2) gave another employee who was accused of stealing a participant's money, but had not asked for an accommodation, the opportunity to resign rather than be terminated (Pl.'s Stmt. Add'l Facts, Ex. B, NSSRA 0990-993, ECF 37-3 at 37-40); (3) told plaintiff she was being selfish when she said she had to leave the camp for health reasons (*id.* ¶

---

[15] Plaintiff disputes some of the facts asserted by defendant in this paragraph, but not the one cited by here.

35; Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶ 30[16]); and (4) did not consider any form of discipline other than termination for plaintiff. (Pl.'s Stmt. Add'l Facts, ECF 37 ¶ 38; *id.*, Ex B at NSSRA 0055, ECF 37-3 at 3). These alleged facts are sufficient to create a triable fact issue on plaintiff's retaliation claim.

## Conclusion

For the reasons set forth above, the Court finds that there are genuine issues of material fact as to plaintiff's ADA claims. Accordingly, the Court denies defendant's motion for summary judgment [30].

**SO ORDERED.**            **ENTERED:** April 1, 2019

*/s/ M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**

---

[16] See. n.1.